No. 31,006.

NICK SUPICA, *Appellee*, v. THE METROPOLITAN LIFE INSURANCE COMPANY, *Appellant*.

(19 P. 2d 465.)

Opinion filed March 11, 1933.

*Edwin S. McAnany, Maurice L. Alden* and *Thomas M. VanCleave,* all of Kansas City, for the appellant.

*J. Willard Haynes* and *S. M. Terbovich,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to collect the amount of a life insurance policy. Judgment was for plaintiff. Defendant appeals.

Mile Milinkovich carried a policy on his life in the defendant company. He died November 17, 1929. Nick Supica, his cousin, was the beneficiary. He also paid the premium. John Yuratovich, a field man for the company, did the collecting. The policy provided that the premium should be payable semiannually. One semiannual installment of $18.94 became due June 19, 1929. Supica claims that he met Yuratovich in the alley on July 8, 1929, and paid him $10 to apply on this premium. The defendant denied that this payment was made on the policy in question, and claims that even if it was it did not operate to keep it in effect. The argument of defendant is that since the contract of insurance provided that the premium should be paid semiannually, to permit the payment of any less than a semiannual premium would be in effect making a new contract for the parties. The argument of the plaintiff is that when the company, through its agent, accepted and retained an amount less than that necessary to make a semiannual payment it was its duty to apply the amount received to keep the policy in effect for whatever time the amount received would pay for.

The case was tried to a jury which found that Supica paid the $10 on July 8, 1929; that he told Yuratovich to apply it on the Milinkovich policy, and that the amount necessary for a quarterly payment was $9.66. The jury answered further special questions as follows:

"6. Did M. Hetherington, clerk of defendant insurance company, in charge of addressing and mailing notices of premiums due, on August 2, 1929, duly mail on behalf of defendant company a printed notice under date of August 2, 1929, at New York to Mile Milinkovich, the person whose life was insured under the policy in suit, to the address of Mile Milinkovich, 80 North First Street, Kansas City, Kansas, that the premium thereon of $18.94, due June 19, 1929, was due and unpaid, and that defendant company intended at the expiration of thirty days from August 2, 1929, to forfeit and cancel said policy for nonpayment of said premium, subject, however, to any provisions contained in said policy which are intended under certain conditions to prevent its forfeiture and cancellation? A. Yes.

"7. Did the defendant mail Milinkovich any notice of its intention to forfeit or cancel his policy after August 2, 1929? A. No.

"8. Did Mile Milinkovich or Nick Supica or anyone for said Milinkovich, at any time pay the premium of \$18.94, less a dividend of \$4.42, or the sum of \$14.52, due June 19, 1929, on the policy of insurance in question? A. No, but evidence showed \$10 part payment."

The general verdict and judgment was for the full amount of the policy, less a loan that had been made on it.

The defendant raised the contested point at every stage of the case and makes several assignments of error, but the only question to be answered is the one to which reference has been made.

There is no contention but that the policy provided in clear and unambiguous language that the premium should be paid semiannually. This amounts to a binding agreement on the part of the policyholder to pay semiannually. Does the receipt and retention by the company of an amount less than the semiannual premium operate to keep the policy in force for a length of time in the proportion that the amount paid bears to the amount due?

The question may be treated under the fundamental rules relating to contracts. In Richards on Insurance, 4th ed., the rule is stated as follows:

"A court must not use its discretion to modify the conditions or provisions of the contract entered into by the parties in order to effectuate what it might consider a more equitable arrangement than that resulting from an enforcement of the strict terms of the policy." (§ 70.)

C. J. lays down the rule as follows:

"Where instead of payment of the entire premium at one time, provision is made in the contract of insurance or policy for payment in installments, annually, semiannually, quarterly, monthly, or weekly, as the case may be, each installment must be paid when it falls due according to the terms of the contract in order to keep the policy in force, except where such payment may have been excused or waived by the company." (32 C. J. 1196.)

Also,

"In the absence of an agreement to the contrary, a partial payment of a premium due at a particular time is of no effect. So, where, under the terms of a premium note, the company is entitled to collect premiums so far as earned, the acceptance of a payment on the note which is less than the earned premium at the time the policy is forfeited will not keep the policy alive." (32 C. J. 1312.)

In *Willcutts v. Northwestern Mutual Life Ins. Co.*, 81 Ind. 300, the court dealt with this question. There the insured was paying

his premium by services as an examining physician. He paid the first semiannual premium in that manner and claimed that he was entitled to a credit of $3 on the second premium. The company refused to allow the credit and forfeited the policy. The doctor argued, among other things, that payment of the $3 should have entitled the insured to a proportionate amount of insurance. The policy provided in express terms for semiannual payment of premiums. The court said:

"If it were conceded that the evidence warrants the inference that the sum of $3 due the insured for services as medical examiner was accepted in payment, it would not entitle the beneficiary to recover a proportionate share of the insurance. The rights of the parties are fixed and defined by the written contract, and unless there is a new contract made modifying or abrogating the original, it must control. We know of no case applying to such a policy of insurance as that under construction, the rule that where services are performed under an express contract their reasonable value can be recovered under a *quantum valebat* although there is not a full performance." (p. 305.)

In dealing with a similar question, the court, in *Hudson v. Knickerbocker Life Ins. Co.*, 28 N. J. Eq. 167, said:

"Contracts of insurance are construed and enforced in the same manner that other contracts are. There is nothing in the subject matter of such contracts relieving them from the operation of the legal principles which govern other contracts. If the parties have expressed their mutual purpose in clear and unambiguous language the court has no duty of interpretation to perform, but must then confine itself simply to the duty of carrying into effect the intention of the parties. It has no power to release them from unwise or imprudent engagements untainted by fraud, or to make new contracts for them." (p. 168.)

The question is treated in *Slocum v. New York Life Ins. Co.*, 228 U. S. 364. In that case the annual premium became due and part of it was paid in cash. The arrangement was that the balance should be paid by the giving of a note. This note was not signed when insured died. On a suit to collect the amount of the policy it was urged that the payment of part of the policy kept the policy alive. The headnote of the case, as stated in 57 L. Ed. 879, which deals with this question, is as follows:

"1. Partial payment of a life insurance premium when not within the contemplation of the policy is not effective to keep the policy in force unless the agent, when receiving such partial payment, does something in that connection which operates as a waiver of full and timely payment.

"2. One who deals with an agent, knowing that he is clothed with a circumscribed authority, and that his act transcends his powers, cannot hold his

principal; and this is true whether the agent is a general or special one, for a principal may limit the authority of one as well as of the other."

In the case under consideration there was no evidence that the agent to whom the money was paid was anything more than a selling and collecting agent. He was not clothed with any powers of a general agency. He represented the company only for the purpose of taking applications for insurance and collecting premiums. This latter power was circumscribed by a provision in the policy of which plaintiff was bound to take notice, that payments were invalid unless made in exchange for an official home-office receipt signed by an executive officer of the company and properly countersigned. No such receipt as this was given Supica.

There is no more reason why the courts should modify a plain and unambiguous insurance contract than that they should write a new contract for any other parties. No inequity has been pointed out here. The stability of the insurance business depends on the company being able to calculate the returns from its business to a nicety. To do this it is necessary that actuaries should know that premiums will be paid promptly. Policy forms are scrutinized carefully by state agencies with the idea that inequitable provisions shall not be included. There are liberal provisions about changing the time of payment of premiums from semiannual to quarterly. In view of all these circumstances the courts should hesitate to write a new contract for parties after a loss has occurred.

An examination of the record has convinced us that the demurrer to the evidence of plaintiff should have been sustained.

The judgment of the trial court is reversed, with instructions to give judgment for the defendant.