Atcheson, J.,
concurring: The plaintiffs contend they should receive severance pay from tire City of Topeka because they *79 stopped working there and started working for Shawnee County when the City essentially transferred its parks and recreation system, along with those employees, to the County. The City says not. The dispute depends on the contractual rights the plaintiffs had to severance pay at the time of the transfer. Those rights derive from the City’s personnel policies and the contracts governing the transfer. The personnel policies and the transfer contracts, along with the rest of the evidence before the Shawnee County District Court, establish that the plaintiffs relinquished any right to severance pay they had under the policies in exchange for new and different benefits available to them under the contracts. Accordingly, I agree with the ultimate disposition the majority reaches in finding the plaintiffs now have no enforceable contractual rights to severance pay. But I respectfully take issue with the way the majority gets to that result.
Before the transfer in 2012, the City had in place detailed personnel policies. Pertinent here is what we have referred to as Article VIII that addresses reductions in force and severance pay. For purposes of summary judgment, the City conceded Article VIII created contractual rights for its employees. The 10 plaintiffs in this case, therefore, could receive severance pay consistent with the terms of Article VIII by virtue of their employment in the parks and recreation department. The plaintiffs, however, were not covered by the labor agreement between the City and the American Federation of Teachers union, so their relevant rights derived solely from Article VIII. (Notwithstanding its name, the AFT represents groups of public employees besides teachers, including many of the City’s rank-and-file workers.)
To carry out tire transfer of the parks and recreation department, the City and the County entered into a series of contracts that included provisions for how employees moving from the City to the County would be treated. The relevant contracts created two options for the employees—one of which allowed them to receive severance pay and one of which did not. As I discuss momentarily, the option without severance pay substituted different benefits and incentives. The plaintiffs’ claims depends upon the interplay of Article VIII and tire transfer contracts.[1]
*80 [1] Although die parties acknowledge Article VIII creates enforceable rights for municipal employees, it is not a contract in a conventional sense. None of die plaintiffs negotiated for severance pay when they started working for the City. They simply receive on a take-it-or-leave-it basis die benefits the City makes available. That doesn’t defeat the plaintiffs’ entitlement to what benefits the City has conferred or die application of contract law in resolving disputes about those benefits. Similarly, the plaintiffs neither negotiated nor are parties to the transfer contracts between the City and the County. But they are tiiird-party beneficiaries of die agreed-upon terms of transfer.
The majority fails to correctly construe Article VIII and simply finds that it did not provide for severance pay to the plaintiffs. The sections of Article VIII delineating the specific criteria for receiving severance pay and listing the reasons employees cease to be eligible for severance pay establish the plaintiffs did have a right to that benefit as a result of the transfer of the department from the City to the County. The majority misapplies the rules of contract interpretation and offers specious supporting policy rationales for its contrary conclusion. As a x'esult, the majority never considers the impact the transfer contracts had on severance pay. Each plaintiff made an election under those contracts to trade off severance pay for other benefits. And having made those elections, the plaintiffs cannot now sue for severance pay.
To analyze the legal dispute, I first look at the language of Article VIII and explain why it permits severance pay in this situation. I then consider the language of the pertinent transfer contract and show how it allowed the plaintiffs to swap their right to severance pay for a period of wage protection and other benefits after they started working for the County.
I pause to mention several pertinent principles of contract interpretation. Whether a written contract is ambiguous presents a question of law for a court rather than an issue of fact for the finder of fact. Waste Connections of Kansas, Inc. v. Ritchie Corp., 296 Kan. 943, 964, 298 P.3d 250 (2013). If a contract is unambiguous, it may be construed as a matter of law. Osterhaus v. Toth, 291 Kan. 759, 768, 249 P.3d 888 (2011); Levin v. Maw Oil & Gas, 290 Kan. 928, Syl. ¶ 2, 234 P.3d 805 (2010) (“The interpretation and legal effect of a written instrument are matters of law.”)- A contract is *81 unambiguous “if the language ... is clear and can be carried out as written.” Simon v. National Fanners Organization, Inc., 250 Kan. 676, Syl. ¶ 2, 829 P.2d 884 (1992). Conversely, an ambiguous contract “must contain provisions or language of doubtful or conflicting meaning.” 250 Kan. 676, Syl. ¶ 2. Typically, the words used in a contract should be given their common or customary meaning. Pfeifer v. Federal Express Corporation, 297 Kan. 547, 550, 304 P.3d 1226 (2013); Gold Mine Investments v. Mount Vernon Fire Ins. Co., 48 Kan. App. 2d 818, 824, 300 P.3d 1113 (2013). Ambiguity then arises only if “the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning.” Catholic Diocese of Dodge City v. Raymer, 251 Kan. 689, 693, 840 P.2d 456 (1992); Kincaid v. Dess, 48 Kan. App. 2d 640, 647, 298 P.3d 358 (“A contract is ambiguous when the words . . . may be understood in two or more ways.”), rev. denied 297 Kan. 1246 (2013); Antrim, Piper, Wenger, Inc. v. Lowe, 37 Kan. App. 2d 932, 937-38, 159 P.3d 215 (2007). A contract is not ambiguous simply because the parties disagree about its meaning. Waste Connections, 296 Kan. at 964; Antrim, 37 Kan. App. 2d at 938.
The governing provisions of Article VIII and the transfer contracts are unambiguous. What we have before us is a controlling question of law that the City presented to the district court in its motion for summary judgment and that the City has preserved by cross-appealing the district courts denial of that motion.
Article VIII sets out four requirements an employee must satisfy to get severance pay: (1) The “[ejmployees position has been eliminated” as part of a short-term reduction in force or a permanent reduction in force; (2) the employee has worked for the City for more than a year; (3) the employee “is not continuing to work for the City in a position of equal or greater job classification”; and (4) the employee has signed a release of any potential claims against the City. As to those requirements, everyone agrees all of the plaintiffs worked for the City for more than a year and they did not continue working for the City in equal or greater job classifications after the transfer. Likewise, the City has not argued the plaintiffs should be denied severance pay because they failed to sign releases.[2]
*82 [2]The record on appeal at least suggests the plaintiffs did not sign releases. But if the City did not tender releases to them, the requirement would likely be waived or forfeited. See M West, Inc. v. Oak Park Mall, 44 Kan. App. 2d 35, 54-55, 234 P.3d 833 (2010). In any event, tire requirement for releases is not an issue on appeal.
The remaining condition requires elimination of the employee’s “position.” In context, position refers to the specific City job by title and classification—a common usage consistent with the rest of Article VIII. The word “position” in Article VIII doesn’t mean a comparable job for some other employer. See Merriam-Webster’s Collegiate Dictionary 968 (11th ed. 2003) (“position” defined as “an employment for which one has been hired”). Here, after the transfer, the City no longer had positions for persons interested in working at recreational facilities or in parks and would not have accepted applications for such work. The positions for which the City had hired or employed the plaintiffs had been eliminated. That meaning of position is also consistent with the third criterion for severance pay. An employee could receive severance pay if he or she were placed in another “position” with the City in a lower job classification. So for purposes of tire benefit under Article VIII, severance entails displacement from a particular municipal job.
The City certainly could have conditioned severance pay on some other requirement—it was pretty much free to define eligibility for the benefit as it chose. For example, the City could have required a loss of employment or a stated period of unemployment. Likewise, the City could have excluded the transfer of a municipal department or function to another government entity or a private-sector provider from the severance pay provision altogether. In Article VIII, the City specifically identified employees ineligible for severance pay as those “who resign, voluntarily retire or are fired for cause.” The absence of any other disqualifying circumstances cuts against implying an additional one to fit the facts of this case. See Supica v. Metropolitan Life Ins. Co., 137 Kan. 204, 206, 19 P.2d 465 (1933); see also Lawson v. Sun Microsystems, Inc., 791 F.3d 754, 763-64 (7th Cir. 2015) (applying Indiana contract law); Abraham v. Washington Group Intern., Inc., 766 F.3d 735, 740 (7th Cir. 2014) (“It is the court’s job to respect the terms of the contract and not manufacture additional terms that are missing.”).
*83 Those provisions define eligibility for and exclusion from severance pay under Article VIII. And they unambiguously extend the benefit to the plaintiffs. The majority's reliance on the general statement of purpose for the severance pay policy is misplaced. The stated purpose or intent behind the policy would be legally useful in construing otherwise ambiguous language in Article VIII in the same way extrinsic evidence would be. See Waste Connections of Kansas, 296 Kan. at 963 (use of parol evidence). But if the operative contractual terms are clear, a court discerns “intent” from that language. Osterhaus, 291 Kan. at 768. In other words, a court cannot rely on a general statement of contractual purpose to alter the plain meaning of the operative terms of a particular substantive provision of the agreement. In re Universal Service Fund Telephone Billing Practices Litigation, 619 F.3d 1188, 1204-05 (10th Cir. 2010) (recognizing that recitals of purpose in contract do not override clear substantive terms); United States v. Hamdi, 432 F.3d 115, 123 (2d Cir. 2005) (same); 17A Am. Jur. 2d, Contracts § 373 (if operative contractual language is clear, it controls over recital of purpose). Giving primacy to those general statements over specific contractual terms and conditions would amount to an impermissible rewrite of the parties’ contract. Quenzer v. Quenzer, 225 Kan. 83, 85, 587 P.2d 880 (1978) (court may not rewrite contract or make new contract for parties under guise of construing their agreement); Lauck Oil Co. v. Breitenbach, 20 Kan. App. 2d 877, 879, 893 P.2d 286 (1995) (When a contract is unambiguous, the court’s “function is to enforce the contract as made” and “not [to] make another contract for the parties.”). If the parties have deployed an inefficient or untargeted means of accomplishing their stated purpose, the court has no license to impose a better means—to one party’s advantage—to resolve some later legal dispute between them. Claassen v. City of Newton, No. 111,445, 2015 WL 4366475, at *5 (Kan. App. 2015) (unpublished opinion), rev. denied 303 Kan. 1077 (2016) (“[C]ourts are to enforce unambiguous contracts as they are written and cannot refashion the language to favor a disappointed party’s mistaken expectations.”).
The majority posits other misdirected arguments to bolster its interpretation of the severance pay provision in Article VIII. First, *84 the majority cites a number of cases involving severance pay benefits for workers with pxivate sector employers. But those decisions are highly fact dependent and, therefore, lend virtually no weight to the proper outcome here. Because severance pay policies of private employers amount to “employee welfare benefit plans,” they are regulated under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 (2012) et seq. Those plans have to be in writing, and an employer must designate an administrator to oversee a plan’s operation, including approving or denying requests for benefits. A claimant denied benefits may seek judicial review of the determination as provided in ERISA, 29 U.S.C. § 1132(a)(1) (B) (2012).
The overarching principle the courts apply in ERISA benefits cases involving severance pay is simply that tire plan language governs employee eligibility. Anstett v. Eagle-Picher Industries, Inc., 203 F.3d 501, 503, 506 (7th Cir. 2000) (court recognizes action for severance benefits under ERISA plan functionally presents “a claim to enforce a contract,” so the plan language controls); Weirv. Federal Asset Disposition Ass’n, 123 F.3d 281, 287 (5th Cir. 1997) (There is “ ‘no hard and fast rule that an individual must suffer a period of unemployment to qualify for severance benefits under ERISA[;]’” rather, those courts denying benefits “‘have predicated their decisions on the particular terms of the ERISA plan at issue[.]'”) (quoting Bellino v. Schlumberger Tech., Inc., 944 F.2d 26, 31 [1st Cir. 1991]); Headrick v. Rockwell Intern. Corp., 24 F.3d 1272, 1277 (10th Cir. 1994) (court rejects notion that period of unemployment or loss of income is “an immutable precondition to recovery of severance pay” and turns to terms of plan to determine eligibility); see also 1 Emp. Coord., Benefits § 15:249 (2016) (“employees have been [determined to be] eligible for severance pay . . . depending on the particular terms of the ERISA plan at issue and its application to the specific facts”). That's a basic tenet of contract law, no different from what applies here.
The ERISA cases the majority cites illustrate instances in which employers have drafted plan language to preclude severance benefits upon the transfer of a corporate division or facility to another company with no break in employment for the affected workers. *85 There are other cases in which the courts have held particular plans did permit benefits in those circumstances. See, e.g., Anstett, 203 F.3d at 504-06; Ulmer v. Harsco Corp., 884 F.2d 98, 103-04 (3d Cir. 1989). The Anstett decision collects cases that found severance benefits were due and others that did not. 203 F.3d at 505-06.
On balance, the ERISA caselaw isn’t especially helpful for either the City or the plaintiffs in this case. The plans in those cases took a wide variety of approaches to severance pay and correspondingly used varied language to define eligibility for the benefits. All of that sheds little light on the proper interpretation of what’s in Article VIII. [3]
[3] The precedential value of a given ERISA case also depends on the standard of review the court has applied to the administrators decision interpreting the plan language or denying a claim for benefits. If the plan itself affords the administrator discretionary authority to construe the language or make benefits determinations, then the court applies a deferential abuse-of-discretion standard to those decisions. Otherwise, the court reviews the decisions de novo and, thus, without deference. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); Alexandra H. v. Oxford Health Insurance, Inc. Freedom Access Plan, 833 F.3d 1299, 1311 (11th Cir. 2016) (applying Firestone); Singletary v. United Parcel Service, Inc., 828 F.3d 342, 346-47 (5th Cir. 2016) (applying Firestone and noting that under abuse-of-discretion review an administrators decision will be upheld even if it falls on “the low end” of what might be considered “a continuum of reasonableness”). An ERISA case decided using an abuse-of-discretion standard wouldn’t be especially strong precedent for the best reading to be given comparable language in another plan or contract.
The majority also offers two policy considerations to support its reading of the City’s severance pay benefit—one of them is questionable and the other specious. Borrowing from some of the ERISA cases, the majority suggests a judicial finding that Article VIII allows the plaintiffs severance pay in this case would discourage employers from providing the benefit at all. In other words, an employer will have no severance policy rather than risk being inadvertently on the hook to pay employees who move with a division or facility sold to another outfit without any break in employment. Perhaps some employers would make that choice, but it would place them at a modest competitive disadvantage in hiring. For a government employer, offering an array of fringe benefits *86 and promoting a work environment cultivating quality-of-life attributes may provide the required edge in recruiting against private sector employers that can pay more. Severance pay is part, albeit a distinctly secondary one, of that pitch.
More significantly, severance pay can be used as an inducement to a departing employee to release potential legal claims against the employer, as the City has done with Article VIII. So rather than give up on severance pay, tire savvy employer ought to make sure it has a well-drafted plan or policy that clearly specifies those circumstances calling for payment. The majority’s Chicken-Little thesis seems questionable, especially without some empirical support.
Turning to the specious, the majority says Article VIII should be construed in the City’s favor because to do otherwise would hand “the Plaintiffs a windfall at the expense of taxpayers.” I am aware of no principle of contract law that says government entities should receive a deferential reading of their agreements if doing so will save the taxpayers money. The majority cites none. The idea that one party to a contract ought to be given special consideration in a legal dispute over the meaning of the agreement because of its source of revenue waltzes between rather stupefying and genuinely strange. There really is nothing more to say about that policy argument.
In sum, the plaintiffs were entitled to severance pay under the terms of Article VIII. But, as I have indicated, that is not the end of the legal dispute. The transfer contracts between the City and the County offered the plaintiffs the option of giving up their severance pay for other benefits. The plaintiffs accepted that offer, so they refinquished their Article VIII rights to severance pay.
The relevant transfer contract addressing personnel permits all City parks and recreation employees to become County employees immediately subject to all of the County’s policies and procedures. Those employees presumably would be entitled to severance pay if they otherwise met the eligibility criteria in Article VIII. The contract, however, gives each parks and recreation employee the choice to become a “transferred employee.” As defined in the contract, a transferred employee agrees “not [to] exercise any rights . . . available . . . under Article 8,” meaning he or she relinquishes *87 any claim for severance pay. But “transferred employees” are contractually guaranteed that their salary or wages will not be reduced for 6 months and that they will not be discharged by the County during that time except for legitimate disciplinary reasons. In addition, tire City agrees to pay those employees for their accrued vacation time, and they are allowed to transfer their accumulated sick leave for use with the County. And a “transferred employee” receives spme limited right to severance pay from the County if he or she leaves within 3 years, although the scope of that benefit is something less than clear from its description in the contract.
Basically, then, a City parks and recreation employee moving to the County could opt for severance pay under Article VIII. But that employee would be treated more or less as a new hire with the County. Or the employee could give up any severance pay and become a “transferred employee” with wage and work protection and other benefits they would not otherwise enjoy with the County.
The plaintiffs apparently did not sign any documents with the City or the County specifically acknowledging their elections to become “transferred employees.” At least there are no such documents in the record. But in response to requests for admission from the City, propounded under K.S.A. 60-236, each plaintiff admitted he or she is a “transferred employee” within the meaning of the transfer contracts between the City and the County. Those admissions were submitted to the district court in support of the City’s motion for summaiy judgment and are part of the appellate record. The admissions bind the plaintiffs for purposes of this case. See K.S.A. 2015 Supp. 60-236(b) (matter admitted considered “conclusively established”); see Armour v. Knowles, 512 F.3d 147, 153-54 & n.13 (5th Cir. 2007) (discussing binding effect of admission under comparable Fed. R. Civ. P. 36).
As I have already discussed, “transferred employees” effectively traded any right to severance pay for other valuable benefits. The plaintiffs, as “transferred employees,” cannot now sue to obtain the severance pay they bargained away when they moved from the City to the County. Accordingly, the district court and the majority reach the correct legal result in denying the plaintiffs’ claims, if for less than entirely correct reasons.
*88 My resolution does not depart from the majority’s determination of plaintiffs’ other claims. The City did not constitutionally impair the plaintiffs’ right to severance pay. Under the transfer contracts, the plaintiffs could have chosen to receive any severance due them. So any protections they might have under tire Contracts Clause in Article I, § 10 of the United States Constitution were not implicated in this case. The claim under the Kansas Wage Payment Act, K.S.A. 44-313 et seq., fails because the City didn’t refuse to pay the plaintiffs compensation they were due. Rather, they forsook severance pay and substituted other benefits having value to them. And having done so, they no longer had a legal claim to severance pay. Finally, the plaintiffs can’t base a claim for negligent misrepresentation against the City on their election regarding severance pay, since the letter from the human resources director did not make misrepresentations of pertinent facts. Stechschulte v. Jennings, 297 Kan. 2, 22, 298 P.3d 1083 (2013) (“Negligent misrepresentation addresses negligence of knowledge of material fact and the transmittal of already known material facts.”). The letter may have offered an arguably incomplete opinion or recommendation about the plaintiffs’ options under Article VIII and the transfer contracts. But that’s not the same as providing incorrect representations of material fact, especially when the plaintiffs had access to Article VIII and the transfer contracts in making their decisions. See Davis v. City of Topeka, No. 113,131, 2016 WL 852881, at *5 (Kan. App. 2016) (unpublished opinion) (statement of opinion not actionable as negligent misrepresentation).