No. 53,292

ALFREDA MICHEAUX and WILLIE COTTON, and HARVEY L. LUDWICK, assignee, *Appellants,* v. AMALGAMATED MEATCUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, AFL-CIO, LOCAL P-94, DISTRICT LOCAL 340, and United Food & Commercial Workers International Union, AFL-CIO, CLC District Local 340, its successor, *Appellees.*

(648 P.2d 722)

Opinion filed July 23, 1982.

*Reid Stacey,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellants.

*Frank W. Hylton,* of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a wage claim dispute originally heard administratively pursuant to procedures found in K.S.A. 44-322a. The two claimants before the administrative

agency, Alfreda Micheaux and Willie Cotton, were former employees of Amalgamated Meatcutters and Butcher Workmen of North America, AFL-CIO, Local P-94 (Local P-94) who were not paid wage claims when Local P-94 was taken over by a receiver imposed by the parent labor organization pursuant to its constitution. The administrative hearing officer allowed the full amount of claimed wages. The district court, on appeal by the employer-union, reviewed the administrative decision and denied the wage claim. The Secretary of the Kansas Department of Human Resources, as real party in interest by virtue of K.S.A. 44-324(*b*), appeals the district court's order.

The facts are not disputed. Alfreda Micheaux was hired as secretary to Local P-94 at an executive board meeting in 1969, an action subsequently ratified by the membership. Because there was not a union of secretaries, the union put its employees under the same monetary provisions its members received from the Cudahy Company, the union's biggest affiliate. Ms. Micheaux paid dues as though she were a member of the union. Admittedly, some deviations from the Cudahy contract existed. Health and welfare benefits as well as pension benefits were not controlled by the Cudahy contract. In 1971, the employees of the union were put on a salaried rather than an hourly basis. Salary increases, however, were given according to the Cudahy contract. At one time, the union experienced financial difficulties and was *put into receivership by the international union.* As a result, the employees were forced to accept a freeze in their wages.

Willie Cotton, the other claimant, was appointed business agent for the union in April 1971, after having worked in the Cudahy plant for fifteen years. It was his understanding that, after a probationary period, he would receive the same benefits as he had under the Cudahy contract. Testimony by the former union president and members of the executive board was introduced to substantiate Micheaux's and Cotton's claims that they were hired under provisions of the Cudahy contract.

The Cudahy plant in Wichita closed July 22, 1976, and Charles Coyne of the International Union of Amalgamated Meatcutters and Butcher Workmen of North America, AFL-CIO, took over as receiver of Local P-94 on July 26, 1976, pursuant to constitutional authorization of the International Union. At that time, the receiver was in charge of operations and had the right to control the

union's former employees. Both Micheaux and Cotton were continued as employees of Local P-94 under supervision of the receiver, wages and benefits to continue as before. Six months' notice of termination had not been given. The hearing examiner found that periods of employment after July 22, 1976, were periods of new employment and not relevant to the instant action. Cotton continued to work for the receiver until October 1976 and Micheaux until March 1977. Local P-94 merged with Local 340 in August 1977 with the surviving union assuming the liabilities of the merged union.

At the hearing before the examiner, the parties were concerned with establishing the fact that the receiver terminated them without notice at the time of the merger. In the light of the hearing officer's finding that employment after July 22 was not relevant to this action, the time of the merger would not seem to be the relevant termination date. Both claimants terminated employment with the receiver prior to the merger.

Under the provisions of the Cudahy contract, the employer must give notice in writing of intention to close a plant or a department or division thereof six months prior to the actual closing. If an employee is permanently separated before the expiration of six months, he must be paid for the remainder of the six months. Also under the Cudahy contract, employees are entitled to severance pay when they are terminated because of a reduction in forces arising out of the closing of a department or unit of the business. Neither Micheaux nor Cotton was paid notice of closing pay, and Cotton was not paid severance pay.

Micheaux and Cotton filed claims for wages with the Secretary of Human Resources on March 3, 1977, and March 10, 1977, respectively. An administrative hearing officer heard testimony and received documents into evidence on February 1, 1978. The hearing officer concluded both claimants had been employed by the union pursuant to the terms of the Cudahy contracts and were owed wages. Micheaux's claim for notice of closing pay was affirmed as was Cotton's claim for notice of closing pay, severance pay, and vacation pay. Pursuant to K.S.A. 44-324(*b*), the Secretary of Human Resources took an assignment of the claim.

The *union appealed* to Sedgwick County District Court, contending that the order of the hearing officer was in error and that the appeal provision, K.S.A. 44-322a(*e*), violates the Kansas and

United States Constitutions. The Secretary of Human Resources moved for summary judgment and the *union moved to dismiss the agency action for lack of subject matter jurisdiction.* The clear implication of the union's motion is that the administrative agency acted beyond its authority. The *trial court sustained* the motion to dismiss on two grounds: (1) Severance pay and notice of closing pay are not wages within the meaning of Article Three, Chapter 44 of the Kansas Statutes Annotated, and (2) the statutory scheme violates both federal and state constitutional provisions. The court altered its judgment, on motion by the Secretary of Human Resources, to allow payment to Cotton of his vacation pay according to the Cudahy contract. That sum has been paid and is not under consideration in the instant appeal.

The Secretary of Human Resources, as assignee of the wage claims, filed timely notice of appeal from the district court decision. The case was erroneously filed in the Court of Appeals and transferred to the Supreme Court because the district court had declared a state statute unconstitutional. K.S.A. 1981 Supp. 60-2101(*b*). On appeal the Secretary of Human Resources seeks to limit our review to the actions of the hearing officer, contending questions of jurisdiction and constitutionality, having not been raised before the agency, were untimely and not properly before the district court.

As correctly stated by the Secretary in his brief, the district court's scope of review in an appeal from an administrative agency decision, absent legislative provision to the contrary, is restricted to a consideration of whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority. *Boswell, Inc. d/b/a Broadacres v. Harkins,* 230 Kan. 738, 740, 640 P.2d 1208 (1982); *Kansas Dept. of Health & Environment v. Banks,* 230 Kan. 169, 171-72, 630 P.2d 1131 (1981); *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 450, 436 P.2d 828 (1968); *Coggins v. Public Employee Relations Board,* 2 Kan. App. 2d 416, 419, 581 P.2d 817, *rev. denied* 225 Kan. 843 (1978); *Swezey v. State Department of Social & Rehabilitation Services,* 1 Kan. App. 2d 94, 97, 562 P.2d 117 (1977). The appellate court then makes the same review of the administrative tribunal's action as does the district court to determine whether the district

court properly limited its scope of review. See, *e.g., Boswell, Inc. d/b/a Reno County Adult Care Home v. Harkins,* 230 Kan. 610, 612-13, 640 P.2d 1202 (1982); *Kansas Dept. of Health & Environment v. Banks,* 230 Kan. at 172; *Kansas State Board of Healing Arts v. Foote,* 200 Kan. at 451.

On its face, the jurisdictional question comes within the scope of authority provision. If in fact the agency had no jurisdiction to determine the issue, it necessarily lacked authority to enter an order. The Secretary argues, however, that since jurisdiction was not raised until appeal to the district court the issue was not properly before the district court and is not now properly before the appellate court. We disagree. Subject matter jurisdiction is the power to decide the question and cannot be waived. *In re Miller,* 228 Kan. 606, Syl. ¶¶ 1, 2, 620 P.2d 800 (1980). This court has held "objections to procedural aspects of an administrative hearing, *not going to jurisdiction,* must be made while the agency has an opportunity to correct such deficiencies." (Emphasis added.) *Paul v. City of Manhattan,* 212 Kan. 381, Syl. ¶ 3, 511 P.2d 244 (1973). The question of jurisdiction may be raised, even on the appellate court's own motion. *In re Lakeview Gardens, Inc.,* 227 Kan. 161, 605 P.2d 576 (1980). The district court could properly examine jurisdiction to determine whether the administrative hearing officer acted within the scope of his authority. The question is properly before this court.

The district court's finding that the administrative agency had no jurisdiction to entertain the appeal was based on a determination that severance pay and notice of closing pay are not wages within the meaning of K.S.A. 44-313(*c*).

Under the provisions of K.S.A. 44-322 and -322a the Secretary of Human Resources is given authority to enforce the provisions of K.S.A. 44-313 to 44-326 inclusive to determine wages due when a dispute exists between employer and employee. The claimants in this litigation have proceeded before the hearing examiner, appointed by the Secretary of Human Resources, and in the district court on the theory that it was the Cudahy contract which controls the wage issue.

It must be noted the claimants were not employees of Cudahy when their claims were filed. It was not the closing down of business by the Cudahy plant in Wichita and the termination of Cudahy employees that gave rise to their claim for wages. The

claimants are employees of a local union (Local P-94) that is affiliated with a parent labor organization, International Union of Amalgamated Meatcutters and Butcher Workmen of North America, AFL-CIO. The examiner awarded benefits to claimants figured on two sections of a collective bargaining agreement which was negotiated by Local P-94 and Cudahy to cover employees *other than* the two claimants in this case.

We find it unnecessary to determine whether the Cudahy contract was anything more than a guideline by which the employees of Local P-94 were to be paid. The record is replete with testimony and exhibits that the membership of Local P-94 voted upon pay raises and other business related to their employees.

The claimants' position as to when their employment was terminated, thereby giving rise to the situation upon which they claim wages are due, is at best ambiguous. The hearing examiners found they were terminated when the parent union sent a receiver in to administer the business of Local P-94.

This determination by the examiner was made as a finding of fact. The facts concerning what happened are conceded. The evidence is fixed. Whether the action of the parent union sending a receiver to operate Local P-94 closes the business of Local P-94 is a question of law to be determined on the conceded facts. The claimants were continued in their employment by the union receiver under the same terms and conditions as they had prior to the union receiver's operation of Local P-94.

If the claimants were not terminated as employees of Local P-94, they are in no position to claim they had benefits of the Cudahy contract for severance pay or six months' notice of closing pay. The history of Local P-94 discloses the international parent union had previously sent a receiver in to assist in operating the local union. At that time wages of the employees of Local P-94 were frozen for a period of time.

Unfortunately, the Secretary of Human Resources, who took an assignment of these wage claims on appeal, has not honored this court with a brief on this controlling question of law concerning the internal operations of the parent labor union and its affiliated local unions. We hold where a parent labor union pursuant to its constitution and by-laws sends a receiver to operate the business of a local affiliated labor union, there is no closing of the business of that local union; and where the employees continue to work

under the supervision of the receiver for the same wages and benefits, there is no termination of their employment.

Under these circumstances the administrative agency's finding that the claimants were terminated as employees of Local P-94 on July 26, 1976, when the union receiver took over operations of the local union, is not supported by the evidence.

In corporation law the "merger" of two corporations is the absorption of one corporation by another, which retains its name and corporate identity with the added capital, franchises and powers of the merged corporation. It is the uniting of two corporations by the transfer of property to one of them which continues in existence, the other being merged therein. *Cinocca v. Baxter Laboratories, Inc.,* 400 F. Supp. 527 (E.D. Okla. 1975).

Whether the merger of Local P-94 with the larger local union qualifies as a closing of the business of Local P-94 has not been briefed by the appellant, and is only briefly discussed in the appellee's brief. Theoretically, the collective bargaining agreements of the two unions with other employers would continue to be serviced by the merged unit. The merger of Local P-94 with Local 340 is inconsistent with the concept that Local P-94 closed for business when the receiver was sent in on July 26, 1976.

Assertion by each claimant of six months' notice of closing pay under terms of the Cudahy contract precludes them from claiming wages due on termination of their employment by the union receiver, after the union receivership had been in operation for some period of time. At this point in the time sequence they cannot assert a closing of the business.

In this case the administrative agency had jurisdiction to determine whether wages were due the claimants. It had subject matter jurisdiction. Its determination that wages were due claimants, however, was erroneous for the reasons stated.

The district court on appeal of the administrative decision erroneously referred to the lack of jurisdiction of the administrative agency on the ground that no wages were due the claimants within the meaning of K.S.A. 44-313(c). A second ground asserted by the district court was that the statutory scheme asserted by the claimants violates both federal and state constitutional provisions.

Failure of the parties on appeal herein to brief the constitutional issues suggested by the trial court's second ground for its decision is construed as a waiver of the constitutional issues.

Here the district court determined the administrative agency erroneously determined wages were due the claimants, but for the wrong reason. If the district court's decision was correct for any reason, it must be affirmed. *Farmers State Bank v. Cooper*, 227 Kan. 547, Syl. ¶ 10, 608 P.2d 929 (1980).

Accordingly, the judgment of the lower court is affirmed.