No. 114,484

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TERI SIMPSON; WILLIAM RIPHAHN; DAVID SPECHT; CLAY NEAL;
LYNN BISHOP; BRUCE ANDREWS; ROGER WILCOX;
JOHN BELL; KATHY HUSEMAN; and GENA BROOKS,
*Appellants/Cross-appellees*,

v.

CITY OF TOPEKA,
*Appellee/Cross-appellant*.

SYLLABUS BY THE COURT

1.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the appellate court reviews the matter independently, without any required deference to the district court.

2.

An appellate court exercises unlimited review over the interpretation and effect of written instruments, and it is not bound by the lower court's interpretation over those instruments.

3.

A court's goal when interpreting a contract is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties may be ascertained from the

1

language of the contract without applying rules of construction. A contract should be construed while considering the entire document and without isolating particular sentences or provisions. Courts should also avoid results that vitiate the purpose of a contract's terms to an absurdity, and reasonable interpretations are favored. Whether a written instrument is ambiguous is a question of law subject to de novo review.

4.

While the question of whether a party has defaulted on a contractual obligation is typically one of fact, if the relevant circumstances before the district court are undisputed, then fact questions may be resolved by the appellate court de novo.

5.

Under the facts of the present case, where the purpose of the City's severance pay policy is to provide temporary relief to employees who have lost their jobs through no fault of their own under scenarios where the employee's job or work has been permanently eliminated, the fact that the Plaintiffs all transferred to the County in comparable jobs with comparable benefits without any loss of employment did not constitute a permanent reduction in force or layoff due to work or job elimination under the City's severance pay policy, a necessary precondition to their receipt of severance pay.

Appeal from Shawnee District Court; REBECCA W. CROTTY, judge. Opinion filed October 14, 2016. Affirmed.

*Justin W. Whitney* and *Grant M. Glenn*, of Woner, Glenn, Reeder & Girard, P.A., of Topeka, for appellants/cross-appellees.

*Shelly Starr*, chief of litigation, City of Topeka, for appellee/cross-appellant.

Before POWELL, P.J., PIERRON and ATCHESON, JJ.

2

POWELL, J.:  The Plaintiffs are former City of Topeka (City) employees who worked in the City's Parks and Recreation Department before it was consolidated with the Shawnee County (County) Parks and Recreation Department and whose employment was transferred from the City to the County with no lost work time and no days unemployed. They later sued the City, seeking severance pay and damages pursuant to three theories of relief:  breach of contract, negligent misrepresentation, and unpaid earned wages under the Kansas Wage Payment Act (KWPA), K.S.A. 44-313 *et seq*. The district court granted the City summary judgment on the negligent misrepresentation claim but denied the parties' cross-motions for summary judgment on the other two theories of recovery. After a bench trial, the district court entered judgment in the City's favor on the Plaintiffs' remaining two claims.

The Plaintiffs now appeal, raising numerous points of error while the City cross-appeals, claiming, among other things, that the district court erred in not granting it summary judgment. Because we agree that the City was not required to pay severance to the Plaintiffs whose jobs were transferred to the County with comparable work conditions and benefits without any loss of work, we affirm the judgment of the district court.

FACTUAL AND PROCEDURAL BACKGROUND

The material and salient facts are not in dispute. In August 2011, the City and County decided to consolidate their parks and recreation departments effective January 1, 2012. In effecting the consolidation, the City and the County executed three contracts: City of Topeka Contract Nos. 41460, 41525, and 41666 (the consolidation contracts). Section 3 of Contract No. 41460, which was later amended by Contract No. 41666, provided in part that City employees had the option of becoming County employees on January 1, 2012. Under the consolidation contracts, transferring City employees could not suffer a reduction in salary or wages, be dismissed from employment, or suffer a reduction in regular working hours for a period of 6 months. Moreover, City employees

3

(1) were still eligible to receive severance pay if the County fired them within 3 years of January 1, 2012; (2) could elect to transfer up to 300 hours of accrued, unused vacation leave to the County or have their unused vacation leave paid out in a lump sum; and (3) could transfer a maximum of 1,040 hours of accrued, unused sick leave.

Each of the Plaintiffs had been employed in the City's parks and recreation department. Many of them had worked for the City for a number of years, and all were management level employees not covered by the City's collective bargaining agreement. Before the consolidation, the terms and conditions of the Plaintiffs' employment with the City were governed by the Personnel Code of the City of Topeka (Personnel Code). The Personnel Code was adopted by city ordinance and is amendable by the Topeka City Council.

Article VIII of the Personnel Code pertains to nondisciplinary reductions in force. Section 2 of that article covers permanent reductions in force and severance pay and states that the purpose of severance pay "is to provide temporary relief to employees who have lost their job through no fault of their own," including events such as being separated due to not being recalled from a layoff, waiving a right to recall from a layoff, the employee's work is eliminated or reassigned, or the qualifications for the employee's position change. Under Section 2, an employee is eligible to receive severance pay only if the employee's position has been eliminated and the employee has waived the right to be recalled, the employee has been employed by the City for over 1 year, the employee is not continuing to work for the City in an equal or greater job position, and the employee has executed an agreement and complete release of all claims against the City. The section also provides that an employee entitled to severance pay is to receive roughly 1 week of pay for every year worked, unless the employee has worked over 10 years with the City, then the employee is entitled to 2 weeks of pay for every year worked. In no instance is an employee's severance pay to be over 1 year's salary.

Before the consolidation took effect, the City's director of human resources sent a letter to the City employees impacted by the consolidation, including the Plaintiffs. The letter, dated November 10, 2011, stated in part:

"As a result of the consolidation you have the opportunity to transfer employment to Shawnee County employment within the consolidated Shawnee County Parks and Recreation Department. You have received information from Shawnee County regarding your position assignment should you elect to transfer to county employment. As part of this consolidation you have the opportunity to transfer employment to Shawnee County and as such the provisions [of] the City of Topeka Personnel Code, Article VIII, Non-disciplinary Reductions in Force [are] not applicable. If you elect not to transfer employment to Shawnee County, you will have the option to retire from City of Topeka employment if you meet the eligibility requirements under the KPERS retirement system for full or reduced retirement benefits. If you elect not to transfer to Shawnee County Employment and are not eligible for retirement or chose not to retire under the KPERS retirement system, you will be considered to have voluntarily resigned your employment with the City of Topeka effective December 31, 2011."

The City did not offer to put the Plaintiffs on a reemployment eligibility or recall list. The Plaintiffs did not fill out County job applications nor did they interview for County positions. Each of the Plaintiffs submitted all the paperwork that the City required. On December 31, 2011, the Plaintiffs' employment with the City ended, and the next day they became County employees. At present, four of the Plaintiffs no longer work for the County: three retired in 2012, and one voluntarily left for another position in 2013. The remaining Plaintiffs continue to work for the Shawnee County Parks and Recreation Department.

In 2012, the Plaintiffs filed suit against the City for lost severance pay under the theories of breach of contract, negligent misrepresentation, and unpaid wages under KWPA. The City filed an answer admitting the Plaintiffs had not been paid severance but otherwise denying the allegations. After the Plaintiffs sought summary judgment on their

5

breach of contract and KWPA claims, the City moved for summary judgment on all of Plaintiff's theories.

Highly summarized, the district court granted the City summary judgment on Plaintiffs' negligent misrepresentation claim on the grounds that the letter from the City's director of human resources to affected employees contained at most incorrect interpretations of the Personnel Code but no material misstatements of fact. The district court rejected the parties' cross-motions for summary judgment on the breach of contract and KWPA claims. While the district court found that the parties did not dispute that the Personnel Code constituted a contract, it found that the consolidation contracts between the City and County amended the Personnel Code creating a contract clause problem by impairing the existing contract between the City and its affected employees. In light of this, the district court ultimately concluded that summary judgment under the breach of contract claim was inappropriate because the balance of benefits and detriments occurring by the virtue of the consolidation contracts created a genuine issue of material fact. In addition, while the district court agreed with the Plaintiffs that they had been "discharged" within the meaning of KWPA and that severance pay constituted "wages" under KWPA, it concluded that there were disputed questions of material fact as to whether the benefits of continued employment offset the consolidation contracts' attempt to disqualify transferring employees from severance pay eligibility and the other detriments allegedly suffered by the Plaintiffs. The matter was set for trial.

The bench trial occurred over the course of 3 days. Several witnesses testified, including each individual plaintiff. Following the trial, both parties submitted posttrial briefs with proposed findings of fact and conclusions of law. The district court issued its ruling in a memorandum decision filed August 7, 2015. The court began by addressing the Plaintiffs' KWPA violation claim and noting that it had already determined that severance pay may be wages under KWPA. Thus, according to the district court, the only remaining question was whether the wages had been earned. The district court also found

6

that the consolidation contracts modified the Personnel Code so that the Plaintiffs could not be considered terminated under Article VIII. It concluded that severance pay was contingent on a triggering condition that would have materialized but for the consolidation contracts. In other words, the Plaintiffs had to fulfill the condition precedent of losing their jobs before they could collect severance pay.

The district court next considered whether the consolidation contracts violated the Contracts Clause of the United States Constitution, beginning with determining whether the Plaintiffs' jobs with the County were comparable with their previous jobs with the City. It concluded that while there were various changes in the Plaintiffs' jobs, the changes did not represent substantial or material changes. The district court also briefly discussed the public policy considerations related to modification. After a lengthy discussion of the issue, the district court stated its findings:

> "(1) Defendant has successfully demonstrated the existence of numerous benefits under the Consolidation contracts; not only were the Plaintiffs able to continue with uninterrupted employment, but they maintained their benefits such as health insurance, KPERS and accrued vacation and sick time, (2) the Plaintiffs have failed to prove that the loss of the right to severance pay outweighed the benefits received in the Consolidation contracts, (3) rendering the Consolidation contracts—and their modification of the Code—constitutional under the Contract Clause and, thus, (4) necessitating the entry of judgment against the Plaintiffs on their claims for breach of contract and wages under the KWPA, for the reasons enumerated in the Memorandum Decision and Order from July 18, 2014 on pages 26, 35-36."

The district court also stated that it had the authority to determine that the case should be tried to the court instead of a jury because of the equitable nature of the case with the central issue involving the constitutionality of the consolidation contracts.

7

The Plaintiffs timely appeal the district court's adverse judgment, raising numerous points of error which can be distilled down to four claims that the district court erred (1) by finding that the Plaintiffs had not earned their severance pay; (2) by finding that the City had not breached the Personnel Code in failing to pay the Plaintiffs severance pay; (3) by denying the Plaintiffs their right to a jury trial on their claims; and (4) by not considering the evidence surrounding the City's negotiations with the union representing employees affected by the consolidation. The City cross-appeals, contending the district court erred by (1) finding that the consolidation contracts modified the Personnel Code and impacted the Plaintiffs' right to severance pay; (2) finding that the Plaintiffs' transfer from the City parks and recreation department to the County parks and recreation department constituted an elimination of their positions by the City; and (3) not granting the City's motion for summary judgment.

DID THE CITY BREACH ITS CONTRACTUAL OBLIGATION
BY FAILING TO PAY THE PLAINTIFFS SEVERANCE PAY?

The Plaintiffs' principal claim in this litigation is that the City breached its contractual obligations under the Personnel Code by failing to pay severance pay once the Plaintiffs transferred to the County. The City disputed this point on the grounds that because the Plaintiffs' employment had transferred to the County, no severance pay was owed. Both parties moved for summary judgment in their favor, which the district court denied. The City now cross-appeals the district court's denial while the Plaintiffs do not. Because answering this question will likely be dispositive of the other issues on appeal, we consider it first.

*Standard of Review*

The standards for summary judgment are well known.

"'"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case."' [Citations omitted.]" *Stanley Bank v. Parish*, 298 Kan. 755, 759, 317 P.3d 750 (2014).

"On appeal, we review the matter independently, without any required deference to the district court." *Smith v. Kansas Orthopaedic Center*, 49 Kan. App. 2d 812, 815, 316 P.3d 790 (2013).

Both parties agree that the Personnel Code constitutes the contract which governs the question over whether the Plaintiffs are entitled to severance pay. In considering this question, we exercise unlimited review over the interpretation and effect of written instruments, and we are not bound by the lower court's interpretation over those instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

Our goal when interpreting contracts "is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties may be ascertained from the language of the contract without applying rules of construction." *Anderson v. Dillard's, Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007). A contract should be construed while considering the entire document and without isolating particular sentences or provisions. See *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013). Courts should also avoid results that vitiate the purpose of a contract's terms to an absurdity, and reasonable interpretations are favored. 296 Kan. at 963. Whether a written instrument is ambiguous is a question of law subject to de novo review. 296 Kan. at 964.

While the question of whether a party has defaulted on a contractual obligation is typically one of fact, 296 Kan. at 964, if the relevant circumstances before the district

9

court are undisputed, fact questions may be resolved by the appellate court de novo. See *First Nat'l Bank of Omaha v. Centennial Park*, 48 Kan. App. 2d 714, 725, 303 P.3d 705 (2013) (where relevant circumstances undisputed, appellate court may determine if party substantially performed under contract); see also *Micheaux v. Amalgamated Meatcutters & Butcher Workmen*, 231 Kan. 791, 796, 648 P.2d 722 (1982) (where facts undisputed, question of whether employees of local union were terminated when parent union assumed its operations by appointment of receiver is question of law).

*Consolidation contracts did not amend the Personnel Code*

Before we can answer the question of whether the Plaintiffs are owed severance pay under the Personnel Code, we must first determine whether the severance pay provisions of the Personnel Code were amended by the consolidation contracts. The Plaintiffs argued before the district court, and reprise those arguments before us, that the consolidation contracts amended the Personnel Code to their detriment in violation of the Contract Clause of the United States Constitution. See *Dennis v. Higgins*, 498 U.S. 439, 457, 111 S. Ct. 865, 112 L. Ed. 2d 969 (1991) (Kennedy, J., dissenting) ("The Contracts Clause of Art. I, § 10, provides that '[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts.'"). The City, on the other hand, argues that the consolidation contracts did not amend the Personnel Code. The district court became bogged down on this question, holding that because the consolidation contracts made the transfer of City employees to the County possible as part of the consolidation of both departments and because the Plaintiffs had vested rights to severance pay at the time the consolidation contracts were entered into, the consolidation contracts impacted the Plaintiffs' right to severance pay, necessitating a comparison of the relative benefits of consolidation with the detriment of losing severance pay.

Article VIII of the Personnel Code sets forth the City's policies concerning permanent reductions in force and severance pay:

10

"A.     General. The purpose of the severance pay policy is to provide temporary relief to employees who have lost their job through no fault of their own. Such separation occurs for reasons such as, but not limited to, the following:

1.     An employee is not recalled from lay off within the time limit set forth in Section 1 C1;

2.     An employee voluntarily waives the right to recall, as described in Section 1 C2b;

3.     Work is eliminated and is not anticipated to be necessary in the foreseeable future;

4.     Work is reassigned to other employees; or

5.     The qualifications for a position change.

. . . .

"C.     Severance Pay.

1.     Eligibility. Severance pay set forth herein is available only to employees who meet all of the following eligibility requirements:

a.     Employee's position has been eliminated pursuant to the provisions of this Article, Section 1 or 2, and the employee has waived the right to recall from the reemployment eligibility list;

b.     Employee has been employed with the City for one or more continuous years;

c.     Employee is not continuing to work for the City in a position of equal or greater job classification; and

d.     Employee has executed an agreement and complete release of all claims against the City.

Consolidation Contract No. 41460, as amended by Contract No. 41666, states in relevant part:

"1.  GENERAL. All operations, functions, and programs of the City of Topeka Parks and Recreation Department and Cypress Ridge Golf Course (formerly known as Topeka Public Golf Course) shall be consolidated with the Shawnee County Parks and Recreation Department, under the direction and control of the County to be named and

11

referred to as the Shawnee County Parks and Recreation Department, effective January 1, 2012. . . .

. . . .

"3. PERSONNEL.

. . . .

b.      All City Parks and Recreation employees excluding the Forestry Division and Zoo employees, will have the option to become employees of the County on January 1, 2012, and if they choose to do so, will be protected by the personnel policies and procedures of the County.

c.      For purposes of this Agreement, a transferred or transferring employee is defined as an employee described in paragraph 3.b above who (i) leaves employment with the City of Topeka effective December 31, 2011, and joins employment with the County effective January 1, 2012; and (ii) does not exercise any rights which may be available to the employee under Article 8 of City of Topeka Contract #39722 and/or City Personnel Code, except the Article 8 rights of AFT bargaining unit employees agreed upon between the City and AFT as set forth within the attached 'Agreement Regarding Article 8 Rights.'

d.      Except as provided herein, no transferred City Parks and Recreation employees will receive a reduction in salary or wages, be dismissed from employment or receive a reduction in regular working hours other than pursuant to a legitimate disciplinary reason for at least six (6) months after January 1, 2012. Reductions shall thereafter occur only pursuant to County Personnel Rules and Regulations and any applicable civil service or union contract.

e.      Any transferred City Parks and Recreation Department employee who is not retained by the County for three (3) years after January 1, 2012, and who loses their employment as a direct result of this consolidation, shall be entitled to severance pay as provided by the City personnel policies. Any severance payments made to such employee shall be the financial responsibility of the County."

Our review of these provisions reveals no amendment to the Personnel Code. While the consolidation contracts define a "transferred" or "transferring" City employee as one who left employment with the City effective at the end of 2011, began work with

12

the County the next day, and did not exercise the right to severance pay, according to our review of the record, the Plaintiffs all transferred to the County, received the benefits under the consolidation contracts enjoyed by "transferred" employees, and did not sign any forms waiving their claims for severance pay. In fact, nothing in the language of the consolidation contracts, in the election forms employees filled out, or in actual practice conditioned a City employee's transfer to the County upon such employee's waiver of severance pay. Accordingly, we agree with the City and hold there was no amendment to the Personnel Code.

*The Plaintiffs are not entitled to severance pay under the Personnel Code*

Turning now to the main issue, the City contends that the Plaintiffs are not entitled to severance pay, pointing to both the policy behind severance pay and the language in the Personnel Code. The City submits that since the purpose of severance pay is to provide temporary relief to those employees who have lost their jobs through no fault of their own, the terms "loss of job," "elimination of work," and "position elimination" do not apply to this situation because all affected employees were given the opportunity to transfer to comparable jobs and none of the Plaintiffs suffered any loss of work. Conversely, the Plaintiffs argue that because they left their employment with the City without any recall rights through no fault of their own they are entitled to severance pay. They bolster their argument by pointing out that the Personnel Code does not reduce severance pay in the event a laid-off employee becomes immediately employed elsewhere.

To aid us in our task of faithfully interpreting the provisions of the Personnel Code under the facts presented, we researched prior caselaw from our appellate courts for assistance. We found only two cases that have some factual similarity to ours, but they are of limited value. First, in *Micheaux*, 231 Kan. 791, a labor union local was taken over by its parent union due to a plant closing that affected most of its members. The parent

13

union appointed a receiver to control the operations and employees of the local union. Two employees of the local union continued as employees under the supervision of the receiver but eventually left their employment and subsequently filed wage claims, with one of the employees seeking severance pay. Our Supreme Court framed the question as whether the employees had been terminated as employees of the local, for if so, they were entitled to their claims. The court held that since the parent union took over the local pursuant to its constitution and by-laws, operated that local by a receiver, and the employees continued to work under the receiver for the same wages and benefits, there was no termination of their employment and the employees were not entitled to their claims, which included severance pay. *Micheaux*, 231 Kan. at 796-97.

Second, a panel of our court appeared to adopt the opposite conclusion under a different set of facts in *A.O. Smith v. Kansas Dept. of Human Resources*, 36 Kan. App. 2d 530, 144 P.3d 760 (2005), *rev. denied* 281 Kan. 1377 (2006). There, the company sold its plant and negotiated with the successor the retention of nearly all the plant's employees at the same jobs, for the same rates of pay, and for nearly identical benefits. Employees sued for unpaid vacation pay under KWPA. The panel held that under these circumstances the employees were "'discharged'" under K.S.A. 44-315 and they were owed their vacation pay. 36 Kan. App. 2d at 536-39. Most significantly, the panel distinguished a line of federal cases cited by the employer, which we discuss below, recognized the difference between severance pay provisions and wage payment statutes—noting that severance pay, unlike vacation pay, typically served to protect employees from the economic hardship of joblessness and to reward past service—and determined that the severance pay policies at issue in the cases cited by the employer provided that severance pay was only due in the event of a permanent job loss. 36 Kan. App. 2d at 536-38.

More helpful are numerous federal court decisions that have considered the propriety of severance pay under similar factual scenarios, often in the context of ERISA

14

litigation, with some courts reasoning that severance pay was not owed and others taking the opposite view. In *Awbrey v. Pennzoil Co.*, 961 F.2d 928, 931 (10th Cir. 1992), a case most factually similar to ours, the Tenth Circuit Court of Appeals rejected claims for severance pay by employees who transferred to the successor company. There, Pennzoil operated a potash mine and sold the mine to another company. The new owner continued operations without interruption, and the employees went to work for the buyer in the same positions and salaries with comparable benefits and no loss of work. Pennzoil's severance policy allowed for severance pay if the employee's job had been eliminated. Making arguments similar to the ones before us, the employees argued they were entitled to severance pay because their employment had been terminated. The company asserted that no severance pay was due because no permanent jobs had been eliminated and the employees were offered comparable jobs. The Tenth Circuit agreed with the company, holding that no severance pay was due as there was no requirement that comparable employment had to be with the same company, that comparable employment did not mean identical employment, and none of the employees suffered any loss of income or missed any work. 961 F.2d at 931; see also *Garvin v. American Tel. & Tel. Co.*, 174 F.3d 1087, 1095-96 (10th Cir. 1999) (employees not laid off due to lack of work as they continued working for successor); *Headrick v. Rockwell Intern. Corp.*, 24 F.3d 1272, 1276 (10th Cir. 1994) (Although employees under the company's policy were entitled to severance pay when they were "'laid off for lack of work,' . . . when an employee retains his job despite a transfer, he has not suffered for 'lack of work.'").

Other federal circuits in cases with similar fact patterns have also rejected severance pay claims by affected employees. See, *e.g.*, *Allen v. Adage, Inc.*, 967 F.2d 695, 700 (1st Cir. 1992) (reduction in force does not include instance where employees continually employed by successor doing roughly comparable work for roughly comparable pay); *Bradwell v. GAF Corp.*, 954 F.2d 798, 800 (2d Cir. 1992) (no severance where employee kept in same job despite change in ownership because no lack of work and no permanent lay off); *Harper v. R.H. Macy & Co.*, 920 F.2d 544, 545 (8th

15

Cir. 1990) ("The plan's language does not permit an interpretation that employees who continue to work without interruption on comparable terms for the purchaser of their employer's business have been 'permanently terminated' by the sale."); *Rowe v. Allied Chemical Hourly Employees' Pension Plan*, 915 F.2d 266, 269 (6th Cir. 1990) (plaintiff's separation from Allied and immediate employment with Armco upon sale of plant did not constitute layoff); *Sejman v. Warner-Lambert Co., Inc.*, 889 F.2d 1346, 1347 (4th Cir. 1989) (employees not entitled to severance pay due those terminated as a result of job elimination where employees transferred to successor company instead), *cert. denied* 498 U.S. 810 (1990).

Three rationales underlie the reasoning in most, if not all, of these cases. First, and most importantly, the courts in these cases construed the plain language of the various severance plans at issue which provided for severance pay in the event of a layoff due to a lack of work or job elimination as not encompassing a job transfer to a successor employer with comparable duties, wages, and benefits and where the employee suffered no lack of work. *Headrick*, 24 F.3d at 1276. As perhaps best stated by the First Circuit Court of Appeals in *Allen*, 967 F.2d at 700:

> "Whatever the exact ramifications of the highly nuanced phrase 'reduction-in-force,' that term would rarely be thought to cover, for severance pay purposes, the selling of a division to another company under circumstances in which the work force is kept solidly in place by the purchaser, doing roughly comparable work for roughly comparable wages."

See also *Garvin*, 174 F.3d at 1095 (plain language of termination allowance provision prohibits employee recovery where employee retains job despite a transfer); see, *e.g.*, *Bradwell*, 954 F.2d at 800 (plain language of severance policy does not entitle employees to severance pay for being "'permanently laid off because of lack of work'" because employees kept in existing job by new owner); *Harper*, 920 F.2d at 545 (severance policy "does not permit an interpretation that employees who continue to work without

16

interruption on comparable terms for the purchaser of their employer's business have been 'permanently terminated' by the sale"); *Rowe*, 915 F.2d at 269 (under de novo review of employer plan separation from company and immediate reemployment by successor did not constitute layoff).

Second, the primary intention behind severance pay is "to help former employees minimize the privations of temporary unemployment while they seek new work." *Headrick*, 24 F.3d at 1276. The Second Circuit Court of Appeals emphasized this point in *Bradwell*, 954 F.2d at 800:

> "The allowance of severance pay even if an employee takes another job does not alter the basic eligibility requirement. Employees kept on by a plant owner's successor are in a different position from those who are laid off but find alternate employment. The former are not faced with the same risk of unemployment as are those who are permanently laid off because of lack of work. The [Severance Pay] Policy provision ensures that those laid off will not be discouraged from seeking alternative employment; it does not place [the employees] in the same position as laid off employees who may or may not find other jobs."

See also *Garvin*, 174 F.3d at 1097 ("[W]hile an employee who is 'laid off' due to lack of work but is fortunate enough to find a fully equivalent job on his own . . . is entitled to benefits, an employee who is simply transferred from one owner to another without any of the concomitant risks of unemployment or changes in job duties and benefits is not.").

Third, awarding severance pay to employees who merely transferred from one owner to another with no job loss or lost work time amounts to a windfall and a disincentive for employers to provide severance pay at all. In *Headrick*, 24 F.3d at 1276-77, the Tenth Circuit ridiculed the idea that employees who retained work in the new company would be entitled to severance pay: "[R]ather than softening the blow of a period of unemployment, it would only serve to provide [the employees] a happy period

17

of double income." The same court noted in *Awbrey*, 961 F.2d at 932 (quoting *Schwartz v. Newsweek, Inc.*, 827 F.2d 879, 883 [2d Cir. 1987]): "'[A] recovery by [employees] in these circumstances would reduce the incentives for employers to attempt to secure positions for employees with the purchaser of a division when those employees might well prefer such employment over a relatively small amount of severance pay.'" The First Circuit stated in *Allen*, 967 F.2d at 702:

> "It is surpassingly difficult to fathom why an employer would provide a trouvaille for employees who, when separated from its service, are simultaneously transferred en masse, by prearrangement, to another employer's payroll, without any temporal hiatus or significant diminution of earnings or benefits. [Citations omitted]. We think it beggars credulity to impute such altruistic beneficence to an employer without some clear indication to that effect in the plan documents."

See also *Bradwell*, 954 F.2d at 801 ("[I]n the context of the sale of a business where the buyer retains the former owner's employees, it would give a windfall to award severance pay to employees who never changed their jobs and were never out of work."); *Sejman*, 889 F.2d at 1349 (overly generous severance pay policies "discourage employers . . . from seeking to ensure that their former employees retain their old positions or encourage such employers to forego severance payments altogether").

Those federal courts taking the opposite view largely agree with the Plaintiffs' position and emphasize that there are no hard and fast rules governing severance pay as each case turns on the specific provisions of an employer's severance policy. Moreover, they reject the view that a period of unemployment is required to receive severance pay if not so conditioned in the employer's severance pay policy as an employer has the ability to write the policy to include such a requirement, plus an employer should be held to the strict terms of its policy. They also hold that termination by its plain terms means cessation of employment from the original employer. See, *e.g.*, *Anstett v. Eagle-Picher Industries, Inc.*, 203 F.3d 501, 504-06 (7th Cir. 2000) (employees employed by successor

18

after sale entitled to severance pay despite no loss of employment because policy not conditioned upon period of unemployment); *Bellino v. Schlumberger Technologies, Inc.*, 944 F.2d 26, 31 (1st Cir. 1991) (where severance policy not conditioned upon period of unemployment, transferring employees entitled to severance pay); *Ulmer v. Harsco Corp.*, 884 F.2d 98, 102-03 (3d Cir. 1989) (continuing employment means working for original company not successor); *Harris v. Pullman Standard, Inc.*, 809 F.2d 1495, 1498 (11th Cir. 1987) (termination of employment means not working for original company); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1354-55 (9th Cir. 1984) (employees who went to work for successor corporation entitled to severance pay as termination of employment under policy means termination of employment with original company).

While we agree that there are no hard and fast rules governing severance pay, those courts rejecting severance pay under similar circumstances have the better arguments as they more faithfully follow the severance pay provisions in the Personnel Code. Our reading of the Personnel Code compels us to deny severance pay to the Plaintiffs under the circumstances presented here. They were transferred to the County in comparable jobs with comparable pay and benefits and with no loss of work. Article VIII of the Personnel Code stresses that the purpose of severance pay "is to provide temporary relief to employees who have lost their job through no fault of their own" under scenarios where the employee's job or work has been permanently eliminated. In our view, the severance pay policy envisions a period of unemployment or at least the risk of a period of unemployment. In addition, we construe the term "temporary relief" to mean relief from both the economic and emotional stress that comes with a possible period of unemployment. None of the Plaintiffs suffered a period of unemployment or the possibility of such a period of unemployment as the City ensured they would have comparable positions with the County after consolidation.

Moreover, the Personnel Code conditions severance pay in the event of a permanent reduction in force or layoff where the employee's position or job is

19

permanently eliminated. Given the fact that the Plaintiffs all transferred to the County in comparable jobs with comparable benefits without any loss of employment, we cannot say that the Plaintiffs lost their jobs or that their work or jobs were permanently eliminated, a necessary precondition to the receipt of severance pay as provided in the Personnel Code. The City negotiated a transfer of their positions to the County, and the Plaintiffs were not required to apply for work at the County. To award severance pay in this instance would amount to a windfall to the Plaintiffs at the expense of taxpayers and would serve to punish instead of rewarding the City's efforts at ensuring its employees were allowed to transfer to the County. Therefore, the City was entitled to summary judgment on the Plaintiffs' claims for breach of the Personnel Code.

As for the Plaintiffs' other causes of action, because we hold that their claims for severance pay are without merit, their negligent misrepresentation claim cannot survive given that no damages can be established. See *Stechschulte v. Jennings*, 297 Kan. 2, 22, 298 P.3d 1083 (2013) (elements of negligent misrepresentation claim include damages). The same is true for their KWPA claims. Even if severance pay could be considered wages pursuant to KWPA under these facts, the Plaintiffs' claims for severance pay under KWPA fail because they did not meet the necessary preconditions required under the Personnel Code. See *Morton Bldgs., Inc. v. Department of Human Resources*, 10 Kan. App. 2d 197, 199-200, 695 P.2d 450 (conditions precedent to receipt of fringe benefit provided by employer's policies must be met before one may make successful claim for wages), *rev. denied* 237 Kan. 887 (1985). As for the Plaintiffs' claims for a jury trial, as our earlier discussion of our standard of review suggests, the grant of summary judgment to the City eliminates the notion that any disputed material facts need to be decided by a jury. Also implicit in our decision is that any evidence concerning the City's negotiations with the union representing the affected employees is irrelevant because there are sufficient uncontroverted material facts in the record to support our determination that the City did not breach the Personnel Code when it denied the Plaintiffs severance pay. See generally *Kansas Turnpike Authority v. Wheeler*, 243 Kan. 602, 614, 760 P.2d 1213

20

(1988) (where court relied only upon language of trust agreement to grant summary judgment, it properly did not consider extrinsic evidence); *American Ramp Co. v. City of Leavenworth*, No. 105,630, 2012 WL 1352833, at *8 (Kan. App. 2012) (district court did not abuse discretion by denying discovery of other facts sought by losing party and properly granted summary judgment as controlling facts necessary for summary judgment were uncontroverted), *rev. denied* 297 Kan. 1243 (2013).

Accordingly, we affirm the judgment of the district court denying the Plaintiffs' claims for severance pay, albeit under reasons which differ from those of the district court. See *State v. Bryant*, 272 Kan. 1204, 1210, 38 P.3d 661 (2002) ("[T]he trial court will not be reversed if it is right, albeit for the wrong reason."); *Micheaux*, 231 Kan. at 798 ("If the district court's decision was correct for any reason, it must be affirmed.").

Affirmed.

* * *

ATCHESON, J., concurring: The plaintiffs contend they should receive severance pay from the City of Topeka because they stopped working there and started working for Shawnee County when the City essentially transferred its parks and recreation system, along with those employees, to the County. The City says not. The dispute depends on the contractual rights the plaintiffs had to severance pay at the time of the transfer. Those rights derive from the City's personnel policies and the contracts governing the transfer. The personnel policies and the transfer contracts, along with the rest of the evidence before the Shawnee County District Court, establish that the plaintiffs relinquished any right to severance pay they had under the policies in exchange for new and different benefits available to them under the contracts. Accordingly, I agree with the ultimate disposition the majority reaches in finding the plaintiffs now have no enforceable contractual rights to severance pay. But I respectfully take issue with the way the majority gets to that result.

21

Before the transfer in 2012, the City had in place detailed personnel policies. Pertinent here is what we have referred to as Article VIII that addresses reductions in force and severance pay. For purposes of summary judgment, the City conceded Article VIII created contractual rights for its employees. The 10 plaintiffs in this case, therefore, could receive severance pay consistent with the terms of Article VIII by virtue of their employment in the parks and recreation department. The plaintiffs, however, were not covered by the labor agreement between the City and the American Federation of Teachers union, so their relevant rights derived solely from Article VIII. (Notwithstanding its name, the AFT represents groups of public employees besides teachers, including many of the City's rank-and-file workers.)

To carry out the transfer of the parks and recreation department, the City and the County entered into a series of contracts that included provisions for how employees moving from the City to the County would be treated. The relevant contracts created two options for the employees—one of which allowed them to receive severance pay and one of which did not. As I discuss momentarily, the option without severance pay substituted different benefits and incentives. The plaintiffs' claims depends upon the interplay of Article VIII and the transfer contracts.[1]

[1]Although the parties acknowledge Article VIII creates enforceable rights for municipal employees, it is not a contract in a conventional sense. None of the plaintiffs negotiated for severance pay when they started working for the City. They simply receive on a take-it-or-leave-it basis the benefits the City makes available. That doesn't defeat the plaintiffs' entitlement to what benefits the City has conferred or the application of contract law in resolving disputes about those benefits. Similarly, the plaintiffs neither negotiated nor are parties to the transfer contracts between the City and the County. But they are third-party beneficiaries of the agreed-upon terms of transfer.

The majority fails to correctly construe Article VIII and simply finds that it did not provide for severance pay to the plaintiffs. The sections of Article VIII delineating the specific criteria for receiving severance pay and listing the reasons employees cease to be

22

eligible for severance pay establish the plaintiffs did have a right to that benefit as a result of the transfer of the department from the City to the County. The majority misapplies the rules of contract interpretation and offers specious supporting policy rationales for its contrary conclusion. As a result, the majority never considers the impact the transfer contracts had on severance pay. Each plaintiff made an election under those contracts to trade off severance pay for other benefits. And having made those elections, the plaintiffs cannot now sue for severance pay.

To analyze the legal dispute, I first look at the language of Article VIII and explain why it permits severance pay in this situation. I then consider the language of the pertinent transfer contract and show how it allowed the plaintiffs to swap their right to severance pay for a period of wage protection and other benefits after they started working for the County.

I pause to mention several pertinent principles of contract interpretation. Whether a written contract is ambiguous presents a question of law for a court rather than an issue of fact for the finder of fact. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 964, 298 P.3d 250 (2013). If a contract is unambiguous, it may be construed as a matter of law. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011); *Levin v. Maw Oil & Gas*, 290 Kan. 928, Syl. ¶ 2, 234 P.3d 805 (2010) ("The interpretation and legal effect of a written instrument are matters of law."). A contract is unambiguous "if the language . . . is clear and can be carried out as written." *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, Syl. ¶ 2, 829 P.2d 884 (1992). Conversely, an ambiguous contract "must contain provisions or language of doubtful or conflicting meaning." 250 Kan. 676, Syl. ¶ 2. Typically, the words used in a contract should be given their common or customary meaning. *Pfeifer v. Federal Express Corporation*, 297 Kan. 547, 550, 304 P.3d 1226 (2013); *Gold Mine Investments v. Mount Vernon Fire Ins. Co.*, 48 Kan. App. 2d 818, 824, 300 P.3d 1113 (2013). Ambiguity then arises only if "the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the

23

proper meaning." *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992); *Kincaid v. Dess*, 48 Kan. App. 2d 640, 647, 298 P.3d 358 ("A contract is ambiguous when the words . . . may be understood in two or more ways."), *rev. denied* 297 Kan. 1246 (2013); *Antrim, Piper, Wenger, Inc. v. Lowe*, 37 Kan. App. 2d 932, 937-38, 159 P.3d 215 (2007). A contract is not ambiguous simply because the parties disagree about its meaning. *Waste Connections*, 296 Kan. at 964; *Antrim*, 37 Kan. App. 2d at 938.

The governing provisions of Article VIII and the transfer contracts are unambiguous. What we have before us is a controlling question of law that the City presented to the district court in its motion for summary judgment and that the City has preserved by cross-appealing the district court's denial of that motion.

Article VIII sets out four requirements an employee must satisfy to get severance pay: (1) The "[e]mployee's position has been eliminated" as part of a short-term reduction in force or a permanent reduction in force; (2) the employee has worked for the City for more than a year; (3) the employee "is not continuing to work for the City in a position of equal or greater job classification"; and (4) the employee has signed a release of any potential claims against the City. As to those requirements, everyone agrees all of the plaintiffs worked for the City for more than a year and they did not continue working for the City in equal or greater job classifications after the transfer. Likewise, the City has not argued the plaintiffs should be denied severance pay because they failed to sign releases.[2]

[2]The record on appeal at least suggests the plaintiffs did not sign releases. But if the City did not tender releases to them, the requirement would likely be waived or forfeited. See *M West, Inc. v. Oak Park Mall*, 44 Kan. App. 2d 35, 54-55, 234 P.3d 833 (2010). In any event, the requirement for releases is not an issue on appeal.

The remaining condition requires elimination of the employee's "position." In context, position refers to the specific City job by title and classification—a common

24

usage consistent with the rest of Article VIII. The word "position" in Article VIII doesn't mean a comparable job for some other employer. See Merriam-Webster's Collegiate Dictionary 968 (11th ed. 2003) ("position" defined as "an employment for which one has been hired"). Here, after the transfer, the City no longer had positions for persons interested in working at recreational facilities or in parks and would not have accepted applications for such work. The positions for which the City had hired or employed the plaintiffs had been eliminated. That meaning of position is also consistent with the third criterion for severance pay. An employee could receive severance pay if he or she were placed in another "position" with the City in a lower job classification. So for purposes of the benefit under Article VIII, severance entails displacement from a particular municipal job.

The City certainly could have conditioned severance pay on some other requirement—it was pretty much free to define eligibility for the benefit as it chose. For example, the City could have required a loss of employment or a stated period of unemployment. Likewise, the City could have excluded the transfer of a municipal department or function to another government entity or a private-sector provider from the severance pay provision altogether. In Article VIII, the City specifically identified employees ineligible for severance pay as those "who resign, voluntarily retire or are fired for cause." The absence of any other disqualifying circumstances cuts against implying an additional one to fit the facts of this case. See *Supica v. Metropolitan Life Ins. Co.*, 137 Kan. 204, 206, 19 P.2d 465 (1933); see also *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 763-64 (7th Cir. 2015) (applying Indiana contract law); *Abraham v. Washington Group Intern., Inc.*, 766 F.3d 735, 740 (7th Cir. 2014) ("It is the court's job to respect the terms of the contract and not manufacture additional terms that are missing.").

Those provisions define eligibility for and exclusion from severance pay under Article VIII. And they unambiguously extend the benefit to the plaintiffs. The majority's

25

reliance on the general statement of purpose for the severance pay policy is misplaced. The stated purpose or intent behind the policy would be legally useful in construing otherwise ambiguous language in Article VIII in the same way extrinsic evidence would be. See *Waste Connections of Kansas*, 296 Kan. at 963 (use of parol evidence). But if the operative contractual terms are clear, a court discerns "intent" from that language. *Osterhaus*, 291 Kan. at 768. In other words, a court cannot rely on a general statement of contractual purpose to alter the plain meaning of the operative terms of a particular substantive provision of the agreement. *In re Universal Service Fund Telephone Billing Practices Litigation*, 619 F.3d 1188, 1204-05 (10th Cir. 2010) (recognizing that recitals of purpose in contract do not override clear substantive terms); *United States v. Hamdi*, 432 F.3d 115, 123 (2d Cir. 2005) (same); 17A Am. Jur. 2d, Contracts § 373 (if operative contractual language is clear, it controls over recital of purpose). Giving primacy to those general statements over specific contractual terms and conditions would amount to an impermissible rewrite of the parties' contract. *Quenzer v. Quenzer*, 225 Kan. 83, 85, 587 P.2d 880 (1978) (court may not rewrite contract or make new contract for parties under guise of construing their agreement); *Lauck Oil Co. v. Breitenbach*, 20 Kan. App. 2d 877, 879, 893 P.2d 286 (1995) (When a contract is unambiguous, the court's "function is to enforce the contract as made" and "not [to] make another contract for the parties."). If the parties have deployed an inefficient or untargeted means of accomplishing their stated purpose, the court has no license to impose a better means—to one party's advantage—to resolve some later legal dispute between them. *Claassen v. City of Newton*, No. 111,445, 2015 WL 4366475, at *5 (Kan. App. 2015) (unpublished opinion), *rev. denied* 303 Kan. 1077 (2016) ("[C]ourts are to enforce unambiguous contracts as they are written and cannot refashion the language to favor a disappointed party's mistaken expectations.").

The majority posits other misdirected arguments to bolster its interpretation of the severance pay provision in Article VIII. First, the majority cites a number of cases involving severance pay benefits for workers with private sector employers. But those decisions are highly fact dependent and, therefore, lend virtually no weight to the proper

26

outcome here. Because severance pay policies of private employers amount to "employee welfare benefit plans," they are regulated under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 (2012) *et seq.* Those plans have to be in writing, and an employer must designate an administrator to oversee a plan's operation, including approving or denying requests for benefits. A claimant denied benefits may seek judicial review of the determination as provided in ERISA, 29 U.S.C. § 1132(a)(1)(B) (2012).

The overarching principle the courts apply in ERISA benefits cases involving severance pay is simply that the plan language governs employee eligibility. *Anstett v. Eagle-Picher Industries, Inc.*, 203 F.3d 501, 503, 506 (7th Cir. 2000) (court recognizes action for severance benefits under ERISA plan functionally presents "a claim to enforce a contract," so the plan language controls); *Weir v. Federal Asset Disposition Ass'n*, 123 F.3d 281, 287 (5th Cir. 1997) (There is "'no hard and fast rule that an individual must suffer a period of unemployment to qualify for severance benefits under ERISA[;]'" rather, those courts denying benefits "'have predicated their decisions on the particular terms of the ERISA plan at issue[.]'") (quoting *Bellino v. Schlumberger Tech., Inc.*, 944 F.2d 26, 31 [1st Cir. 1991]); *Headrick v. Rockwell Intern. Corp.*, 24 F.3d 1272, 1277 (10th Cir. 1994) (court rejects notion that period of unemployment or loss of income is "an immutable precondition to recovery of severance pay" and turns to terms of plan to determine eligibility); see also 1 Emp. Coord., Benefits § 15:249 (2016) ("employees have been [determined to be] eligible for severance pay . . . depending on the particular terms of the ERISA plan at issue and its application to the specific facts"). That's a basic tenet of contract law, no different from what applies here.

The ERISA cases the majority cites illustrate instances in which employers have drafted plan language to preclude severance benefits upon the transfer of a corporate division or facility to another company with no break in employment for the affected workers. There are other cases in which the courts have held particular plans did permit benefits in those circumstances. See, *e.g.*, *Anstett*, 203 F.3d at 504-06; *Ulmer v. Harsco*

27

*Corp.*, 884 F.2d 98, 103-04 (3d Cir. 1989). The *Anstett* decision collects cases that found severance benefits were due and others that did not. 203 F.3d at 505-06.

On balance, the ERISA caselaw isn't especially helpful for either the City or the plaintiffs in this case. The plans in those cases took a wide variety of approaches to severance pay and correspondingly used varied language to define eligibility for the benefits. All of that sheds little light on the proper interpretation of what's in Article VIII.[3]

[3]The precedential value of a given ERISA case also depends on the standard of review the court has applied to the administrator's decision interpreting the plan language or denying a claim for benefits. If the plan itself affords the administrator discretionary authority to construe the language or make benefits determinations, then the court applies a deferential abuse-of-discretion standard to those decisions. Otherwise, the court reviews the decisions de novo and, thus, without deference. See *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989); *Alexandra H. v. Oxford Health Insurance, Inc. Freedom Access Plan*, ___ F.3d ___, 2016 WL 4361936, at *8-9 (11th Cir. 2016) (applying *Firestone*); *Singletary v. United Parcel Service, Inc.*, 828 F.3d 342, 346-47 (5th Cir. 2016) (applying *Firestone* and noting that under abuse-of-discretion review an administrator's decision will be upheld even if it falls on "the low end" of what might be considered "a continuum of reasonableness"). An ERISA case decided using an abuse-of-discretion standard wouldn't be especially strong precedent for the best reading to be given comparable language in another plan or contract.

The majority also offers two policy considerations to support its reading of the City's severance pay benefit—one of them is questionable and the other specious. Borrowing from some of the ERISA cases, the majority suggests a judicial finding that Article VIII allows the plaintiffs severance pay in this case would discourage employers from providing the benefit at all. In other words, an employer will have no severance policy rather than risk being inadvertently on the hook to pay employees who move with a division or facility sold to another outfit without any break in employment. Perhaps some employers would make that choice, but it would place them at a modest competitive disadvantage in hiring. For a government employer, offering an array of

fringe benefits and promoting a work environment cultivating quality-of-life attributes may provide the required edge in recruiting against private sector employers that can pay more. Severance pay is part, albeit a distinctly secondary one, of that pitch.

More significantly, severance pay can be used as an inducement to a departing employee to release potential legal claims against the employer, as the City has done with Article VIII. So rather than give up on severance pay, the savvy employer ought to make sure it has a well-drafted plan or policy that clearly specifies those circumstances calling for payment. The majority's Chicken-Little thesis seems questionable, especially without some empirical support.

Turning to the specious, the majority says Article VIII should be construed in the City's favor because to do otherwise would hand "the Plaintiffs a windfall at the expense of taxpayers." I am aware of no principle of contract law that says government entities should receive a deferential reading of their agreements if doing so will save the taxpayers money. The majority cites none. The idea that one party to a contract ought to be given special consideration in a legal dispute over the meaning of the agreement because of its source of revenue waltzes between rather stupefying and genuinely strange. There really is nothing more to say about that policy argument.

In sum, the plaintiffs were entitled to severance pay under the terms of Article VIII. But, as I have indicated, that is not the end of the legal dispute. The transfer contracts between the City and the County offered the plaintiffs the option of giving up their severance pay for other benefits. The plaintiffs accepted that offer, so they relinquished their Article VIII rights to severance pay.

The relevant transfer contract addressing personnel permits all City parks and recreation employees to become County employees immediately subject to all of the County's policies and procedures. Those employees presumably would be entitled to

severance pay if they otherwise met the eligibility criteria in Article VIII. The contract, however, gives each parks and recreation employee the choice to become a "transferred employee." As defined in the contract, a transferred employee agrees "not [to] exercise any rights . . . available . . . under Article 8," meaning he or she relinquishes any claim for severance pay. But "transferred employees" are contractually guaranteed that their salary or wages will not be reduced for 6 months and that they will not be discharged by the County during that time except for legitimate disciplinary reasons. In addition, the City agrees to pay those employees for their accrued vacation time, and they are allowed to transfer their accumulated sick leave for use with the County. And a "transferred employee" receives some limited right to severance pay from the County if he or she leaves within 3 years, although the scope of that benefit is something less than clear from its description in the contract.

Basically, then, a City parks and recreation employee moving to the County could opt for severance pay under Article VIII. But that employee would be treated more or less as a new hire with the County. Or the employee could give up any severance pay and become a "transferred employee" with wage and work protection and other benefits they would not otherwise enjoy with the County.

The plaintiffs apparently did not sign any documents with the City or the County specifically acknowledging their elections to become "transferred employees." At least there are no such documents in the record. But in response to requests for admission from the City, propounded under K.S.A. 60-236, each plaintiff admitted he or she is a "transferred employee" within the meaning of the transfer contracts between the City and the County. Those admissions were submitted to the district court in support of the City's motion for summary judgment and are part of the appellate record. The admissions bind the plaintiffs for purposes of this case. See K.S.A. 2015 Supp. 60-236(b) (matter admitted considered "conclusively established"); see *Armour v. Knowles*, 512 F.3d 147, 153-54 &

30

n.13 (5th Cir. 2007) (discussing binding effect of admission under comparable Fed. R. Civ. P. 36).

As I have already discussed, "transferred employees" effectively traded any right to severance pay for other valuable benefits. The plaintiffs, as "transferred employees," cannot now sue to obtain the severance pay they bargained away when they moved from the City to the County. Accordingly, the district court and the majority reach the correct legal result in denying the plaintiffs' claims, if for less than entirely correct reasons.

My resolution does not depart from the majority's determination of plaintiffs' other claims. The City did not constitutionally impair the plaintiffs' right to severance pay. Under the transfer contracts, the plaintiffs could have chosen to receive any severance due them. So any protections they might have under the Contracts Clause in Article I, § 10 of the United States Constitution were not implicated in this case. The claim under the Kansas Wage Payment Act, K.S.A. 44-313 *et seq.*, fails because the City didn't refuse to pay the plaintiffs compensation they were due. Rather, they forsook severance pay and substituted other benefits having value to them. And having done so, they no longer had a legal claim to severance pay. Finally, the plaintiffs can't base a claim for negligent misrepresentation against the City on their election regarding severance pay, since the letter from the human resources director did not make misrepresentations of pertinent facts. *Stechschulte v. Jennings*, 297 Kan. 2, 22, 298 P.3d 1083 (2013) ("Negligent misrepresentation addresses negligence of knowledge of material fact and the transmittal of already known material facts."). The letter may have offered an arguably incomplete opinion or recommendation about the plaintiffs' options under Article VIII and the transfer contracts. But that's not the same as providing incorrect representations of material fact, especially when the plaintiffs had access to Article VIII and the transfer contracts in making their decisions. See *Davis v. City of Topeka*, No. 113,131, 2016 WL 852881, at *5 (Kan. App. 2016) (unpublished opinion) (statement of opinion not actionable as negligent misrepresentation).

31